Good morning, Your Honor. May it please the Court, my name is Anthony Caldori. I represent Nicholas Yaniro. Mr. Yaniro was convicted before Judge Liflin, and he was sentenced to federal prison and he's presently at Fort Dix. I want to start by looking at the entrapment, no intent issues that were presented at the trial. The Court allowed an entrapment defense and gave an entrapment charge. However, I should have stated I'm reserving three minutes for rebuttal. I apologize. The Court gave an entrapment charge, but then allowed the prosecution to indicate that, or not to indicate, but to state wrongfully to the jury that the entrapment charge could not hold with a no intent charge. And that's just not the case, and it misinstructed the jury and confuses the jury. This area of law, the sex crime committed over an internet chat, just has not caught up with the actual technology and the crime. The fact of the matter here is that there's two parts to this issue. There's the travel to through interstate, and then there is the intent to have sex. And one can be an entrapment, and one can be a no intent. He can intend to travel and not intend to have sex, or he can be entrapped into traveling, which is what the argument was here, and not intend to have sex. All a travel does is give the federal court jurisdiction. Yes, it does, but it's also part of the charge, and it goes more than that. There's a certain taste to these cases that these predators are all around us all the time, and they're coming to get our kids, and they're traveling to get them. And what we're not seeing, and this kind of leads into the argument dealing with Ms. Cashman's testimony, FBI agent Cashman's testimony. What we're not seeing here is that there is a whole level of activity going on in the fantasy room that is not the normal entrapment in the sex case. Look, the normal entrapment in the sex case, in the man case or something like that, is the person sees the other person beforehand, entices that person to have sex with them, and knows the person is under the age of 17 or 16, and then makes the argument that, well, I didn't know she looked older. That's not the issues here. The issues here are these people find themselves in an adult chat room that has a monitor, and it says this room is monitored. They're older people. They're not, and Mr. Yanniro, don't forget, this is going back to 2002. The internet for most people is still pretty much, believe it or not, in its infancy. The usage in America of the internet in 2002 was still less than 25%, and in the age group above 40 years old, it was half that. And Mr. Yanniro is just starting to use this facility, and as part of what's going on, he's in a room that he believes is monitored, and people's ages are being checked out, and there's a fantasy going on. And it goes back and forth and back and forth. He cancels the meeting a number of times, or one time with this particular individual, and three times with another one. The government, acting in concert between the two people who were playing the two parts, the two girls, Toby Girl, which is the gal who he's alleged to, who he was convicted with, and then Emma. Emma goes after him, and Yanniro is a grandfatherly individual, he had three children of his own, raised them, is in his mid to late 50s, and she just pours her heart out how he broke her heart by not making the meeting. That is going on simultaneously with what's going on with Toby Girl. So Emma is done with him, she doesn't want anything to do with him, he's broken three dates, her heart is broken. He now wonders if he's bothered Toby Girl. So he goes back to Toby Girl and he says, hey, I'm really sorry, I hope you're okay with me. She does not come out and say, yeah, it's okay, it's cool. She comes out and acts like a petulant teenager. Now, he's got no knowledge as to whether this individual is playing a game, or this individual is actually a child. He continues the chat. That action of having Emma and Toby Girl act in concert with another is the entrapment, is what gets him to come in, gets him to go back, gets him to continue conversation. Now what happens thereafter is the person comes down with an option. If she's a kid, I'm calling the authorities, which is what he said. Counsel, are you arguing sufficiency of the evidence now? No, I'm arguing that these two things are not in, they're not opposed to one another. They can be both. And by telling the jury that they could not be, there was an inconsistency. Well, counsel, I mean, we know, we're familiar with the record. I mean, the Matthews case is clear to us. Obviously, you cited it. Both sides, yes. Exactly, right. The initial objectionable comment had to do with talking about how there are two defenses that can't possibly be, I guess, put forth here, right? You object, right? I have it right so far. Well, not me, but yes. Somebody objected on behalf of the defense. There's a sidebar. And then the prosecution comes back out and says something about there's factual inconsistencies. Now, question, let's just forget about the first part. If they came out and said there's factual inconsistencies, that's not objectionable, right? No, that would not be objectionable. Here, they actually were permitted to instruct the jury that the two theories cannot stand simultaneously. And in this particular case, they can. I'm not sure they can. Sorry? I don't know that they can. Your Honor, they can. They can and they do all the time. In these cases, because there is this area, there's no conversation, there's no telephone, there's no seeing the other individual, the person can go there with an intent to have sex with a 30-year-old woman who wants to pretend that she's 14, which may or may not be an appropriate fetish or not. I'm not commenting on that, but the fact is people have that fetish. They can go there with that view and still wind up with a 12-year-old. The 12-year-old is not a 12-year-old. She's an FBI agent. I think we understand this point. Sorry? I think we understand this point. Yes. Why don't you move to whatever you would consider to be your second point? The second point, Your Honor, would be in the sentencing area, and I'll reach that very quickly. The government argues in its brief that we waived the objection on the two-point increase for obstruction. I don't believe that we did. You consented to it, actually. Your Honor, what happened was there was a letter of October 24th that had been sent to the court originally, which agreed with the probation department that there was no obstruction. The court asked the question, isn't it a fact that he lied to the investigator? Well, the answer to that question was answered, yes, there was a lie to the investigator. The court also asked, isn't Dunnegan, doesn't Dunnegan hold that a lie does not have to be made to the investigator, to the court during trial in order for there to be obstruction? The answer to that question is yes. It doesn't mean that what Yanniro did here was obstruction. All right? This was a completed crime that the government had all its information on prior to ever asking Yanniro a question. Well, that's another question. I mean, you've moved from waiver into whether or not it was obstruction. Well, my argument was it wasn't waiver because that issue had already been addressed, and the probation report itself addressed it and said there was no. No. The probation report, and I'm reading from it, does not mention lying in the post-arrest state, didn't mention it, and said whether he committed perjury at trial was for the trial judge. Took no position on an obstruction of justice enhancement. And when you got to sentencing, page 8463, and Judge Liflin was running through the various objections, he was told, no, we don't disagree that, you know, you have it here. I, you said he knew the age she said she portrayed. He had discussed sexual acts. Yes, you said. And the court said, I think that's enough to find obstruction of justice. And he found that 3C1.1 does apply and there was no objection. But it was not enough, Your Honor, and the fact. Look, you concede we're here in plain error review on this issue. I don't concede that, Your Honor, but I do believe that the actual. You say plain error review. I'm sorry, that's, yes, that's correct. But it is plain error review, Your Honor, in this, it is plain error, rather for the court to not apply the entire part of the obstruction charge. It's got to be more than just lying. And the cases are myriad of that. It also has to have an effect and it has to actually obstruct. Here, what the government was trying to do was get him to give them a confession or an admission. Can I correct you? Yes, sir. When we're dealing with a post-arrest statement, we have to look, I think, to Application Note 5 to 3C1.1. And in my view, and I speak only for myself, I'm not so sure that it could be applied based on the post-arrest statement because they were not under oath and given to a law enforcement officer. That's your best argument of the post-arrest statement. But then you could, well, get you, but I'm sure Mr. Romano will get there very quickly, having heard my little opening salvo here. You get to perjury. Did he lie under oath? And perhaps you would want to address that, although Judge Lifton did not find it necessary to do so, given the fact that he found obstruction under the post-arrest statement. Well, I don't believe he lied under oath, Your Honor. I believe he told his truth, what his intents were and what he had hoped and didn't know was going to happen. Is there a specific question and answer? But the jury found against him, right? Yeah, but that's not dispositive, Your Honor. The jury finding guilt means they didn't believe what he had to say. It doesn't mean it be intended to commit perjury. It is not dispositive in all cases. I understand. That's correct. If it were, Your Honor. But if they didn't believe this was a fantasy, if they didn't believe he was role-playing. Yes. It doesn't mean he wasn't. There has to be more than just a jury finding that they didn't believe him. And don't forget, this is also, this brings us to our third and final point with three seconds left, which is Cashman gets to go up there and give her interpretation of what she thinks he means when he says certain things such as, oh, we could get caught, which is part of the fantasy as well is that they're going to get caught, there's some danger to it. She gets to say, well, you know, we could get caught, that's a bad thing. Was it a fantasy that he travels to New Jersey? No, he's there. He's there, he's there with the MapQuest, he's there with the condoms, he's there with the whole, you know. And he's with a girl. He's there displaying quite a lot of consciousness of guilt, I would think, as he gets in and out of the car. Well, he also is there to meet a person who he thinks is an adult and in fact does meet a person he thinks is an adult. That can't be a fantasy. Unfortunately, he's FBI. That can't be a fantasy. What's that? To travel all the way to New Jersey to meet an adult. Your Honor, that is a regular fantasy. I've tried a number of these cases. I don't want to go to meet an adult. I came to New Jersey today, Your Honor, all the way from Long Island to meet three adults. And I'm having a great time, by the way. And it's everything I wanted it to be. So I guess I go home happy. But my point, Your Honor, is that. I have the greatest line, but I will not use it. Maybe you'll send it to me. Yes, okay. Or send me an e-mail, Your Honor. But the point is that he can, he can in fact. Who would have thought this case would end up with laughs? It's not funny. No, but it is funny, Your Honor. And it is sad as well. I'm picking up on your double entendres. No, and I know that. And you know what? But that's part of the problem with these cases. They're all double entendres. I've tried a number of them. No, they're not. Well, not all. There are some. I'm not denigrating the cases where we have other proof of someone who's been a predator. There was none here. There was no porn on the computer. There was no porn found in the house. There was no attempts to get pity porn. There was no request for pictures of her in any kind of ways that were inappropriate. So all those things are not there, which leads that whole argument of sexual predator, which was not allowed by Judge Lipson. The agents, though, were not there that day. But, Judge, that is the problem with these cases. He says, and has always maintained, and even at trial said, that if she were actually an underage child, his intent was to call the police. There's no reason, given everything else in this man's life to believe, that that's not what would have happened. He would have been completely repulsed by an actual 12-year-old. There's an entire, I hate to, I just want to preface this by saying I'm a good Catholic boy who was raised in Long Island and still practiced, but I am also aware of what fetishes are out there. And one of those fetishes is an entire level of photography that deals with taking adult women, and mostly Asian, and dressing them in Catholic school garb, and taking them and making them undress and do sexual acts. Whether it's your fantasy or not, whether it makes you happy or not, isn't the issue that the jury has to address. It can't even address the issue of whether or not they find it disgusting. But I will tell you that there are 16-year-old boys who would like to meet 16-year-old girls. There are 32-year-old men who would like to meet 15-year-old girls. And there are 32-year-old men who wish their 30-year-old girlfriends would dress up like they were 16 and be cheerleaders. And if that's what he was hoping to meet, he didn't get a chance to really put that forward at the trial, because, one, the jury was told that you can't have both a non-intent and an entrapment. And, two, you've got this Ms. Cashman, who is certainly not an expert in anything, getting up there and saying, well, this is what he meant by this, and this is what he meant by that, and completely knocking out any other interpretation. We understand your argument. We'll get you back on rebuttal. Thank you, Your Honor. Thank you. Mr. Romano. May it please the Court, John Romano for the United States. Just addressing Mr. Calalore's first argument on the entrapment issue, the government did not say that he could not raise both offenses. The district court clearly instructed the jury that it could consider the entrapment offense, it could consider his other defenses. And Matthew says you could point out the inconsistencies between those two defenses, and it's well settled that you can. And here the government simply made a factual argument that they weren't inconsistent. On one hand, the defendant said, you know, I affirmatively entered this relationship, I was in the gung-ho, it was all fantasy, role-playing. On the other hand, he was saying, you know, I was forced to do this. Well, I can see where there's a factual inconsistency, and I think everyone agrees you're able to comment on it. You did comment, not you, but the AUSA panel of the case commented on it. Let me ask you, if we were to find that the initial comment were, I guess, contrary to Matthew's, are you making an argument that it was harmless error? Oh, certainly. And in any event, you know, the district judge instructed the jury that, you know, I'm the final arbiter of the law. You know, if the parties say otherwise, you disregard them. And to the extent this could be seen as a legal argument, and I don't really see how it can be, then, you know, that instruction was enough to, you know, to cure any error there was. That's the jury charge, right? There wasn't a curative instruction. No, but the jury charge was very clear, and it instructed the jury on all the elements and said, you know, the government has to disprove entrapment by, you know, beyond a reasonable doubt. So there was no harm in, you know, that very isolated comment, you know, be as it was. At the end of Mr. Collilore's discussion, he got a little bit into the, you know, 701 issue. And I think it's clear that the investigator was, those questions were, you know, perfectly appropriate. She was, you know, it was helpful to the jury in two ways. It explained how she was answering as a 13-year-old girl. And there's, you know, a very close case in the southern district called McBarra that talks about that and explains that, you know, these chats are often confusing. You have to kind of, you know, it's helpful to have them, have the participants say, you know, this is what I thought he was getting at. This is why I responded the way I did. And also just because of the entrapment defense. I mean, the government is essentially on trial for what it did. And here we have the investigator saying, well, you know, this is what I understood he was saying. I wasn't going after this man. I wasn't harassing him. He was saying things that were significant to me. They meant he was interested. He was ready, willing, and able to meet with a minor for sex. So, I mean, those are all helpful to the jury. The case you cited before is McBarra? McBarra is a southern district case. And I think Brand has very similar language, and that's a Second Circuit case. If I can move on to the obstruction issue, I had multiple arguments on that. I think he did waive it. You know, Judge Liflin would have moved on. He was discussing Dunigan at the time. He was saying Dunigan involved only trial testimony. It was very clear he would have moved on had he had the opportunity. The defendant conceded the argument. There was no point in moving on. Yeah, but, and you know what I'm going to ask you now. Judge Liflin did not make any findings, and Dunigan requires findings on whether or not there was perjury. Well, this court has since then, you know, said there does not need to be expressed findings, and I would definitely direct the court to... I understand that, but where are the implicit findings, Stephen? Well, I think they're implicitly there in the sense that he was about to move on, and he thought that, you know, this case involved more than simply the trial testimony. Be that as it may, the defendant has not shown that there was any prejudice or that there was substantial unfairness here, which he has to do on plain error review. And I point the court to the Gricko case. Well, before you get to whether there was any unfairness, I think we have to get to whether there was error. And you cite, and I know, because I understand the proposition. We can affirm for any reason that finds support in the record, even though the district judge did not find on that ground. But I don't know if that rule encompasses findings of fact, that we can make findings of fact to support the district court's ruling. Well, I would point the court to the Gricko case. That was a case written by then-Judge Alito. And the finding there as to one of the defendants, the only finding as to obstruction of justice, was the two-level enhancement applies here. That was the entire finding made by the district court judge. And in that case, the court said there would be no need to remand the fine perjury because a review of the record showed that it was obvious. And there was simply no reason to remand the case for the district court judge to state the obvious. And here, Judge Liflin is no longer available. The case would have to be sent to a new district court judge just to find what is very clear from the record. I mean, he testified, I believe she was an adult playing a minor. And for the jury to convict on both counts, it had to find unanimously, beyond a reasonable doubt, that he believed she was a minor. So, I mean, clearly, I mean, it's an irreconcilably inconsistent. And Gricko, I think, is directly on point that this court could just look at the record, it's very clear, and say, you know, he was not prejudiced here because he did commit perjury. And there's no reason to send this back just to state the obvious. If the court doesn't have any other questions, I'll rely on my brief. No. Thank you. Okay. Your Honors, I just want to take a brief moment to address that very last point. If counsel's position is correct and the district court can act without any findings, specific findings, then the amount of pressure put on a defendant and on defense counsel not to testify would be a disaster for our justice system. There's got to be a separate finding by the court. Juries do all kinds of things in the jury room. We know this from all the evidence of jury review that we've done over the last 25 years. And we know they make compromises. We know they make certain decisions. We've seen an entire generation of racism decisions that came down that were against other evidence. I'm not saying what the jury did here was necessarily against the evidence. I don't agree with the court, with the jury, excuse me. But I won't say what they found was against the evidence. But it doesn't mean that he had to have committed perjury because they don't believe him. There's a difference and there's a disconnect. And one does not lead to the other necessarily. Well, with reference to the first part of your comment, I mean, the Supreme Court in Dunnigan is very clear as to the risk of a defendant testifying. And one of the risks is that the record can be so strong by virtue of his testimony that a judge can make the finding that he lied. I guess one can say it can be so strong that it could be almost as a matter of law that there was perjury committed.  I tell you, I too am somewhat uncomfortable with making factual findings on this court, although I guess I violated that rule not so long ago myself. But still, it's an interesting point that Mr. Romano raises. When you do read the defendant's testimony and you do read it in light of the allegations in the complaint and the jury's verdict, on plain error review, and I'm asking a question, I don't know. If I do, I'm not going to say what it is. Under the fact of this case, does it make sense to send it to another district judge to do the same thing that we're doing here, you know, reading the testimony, reading the charges, and coming to a conclusion? But that's what it's all about. Maybe I'm colored by the fact that I know Nick DiNero for as long as I do. I don't see the testimony when I read it on its face as being inconsistent necessarily with the facts that the people put forward. I see a conflict. I see a person who maybe even was conflicted, but I don't see a person who didn't believe what he was testifying to, and I don't see a person who lied about what he testified to. So I guess I'm not the right person to answer. If I were reading it on review, I probably wouldn't find the two-point enhancement. Maybe I'll get lucky with a judge who feels that way. I don't know what this court should do to that extent. I would imagine that if the court truly believes it's in the record so clearly that it shouldn't be sent back, then it shouldn't be sent back. Of course, this would all be moot if we were to find the post-arrest statement warranted. Well, and that's true also, except, again, there I don't believe they do, given the reasons we talked about in the briefs. Thank you very much. Thank you so much, both. This is very well argued, and we'll take the case on your behalf.